

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
APR 14 2017
ARTHUR JOHNSTON
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TINA L. WALLACE                                                                      PLAINTIFF

VS.                                                    CIVIL ACTION NO. 3:17-cv-270 DPJ-FKB

CITY OF JACKSON, LEE VANCE,
in his Individual Capacity,
and JOHN DOES 1-4                                                                 DEFENDANTS

## COMPLAINT
(Jury Trial Demanded)

Tina L. Wallace, by and through her attorney of record, hereby files this Complaint against the Defendants, and in support thereof would show unto the Court, the following to-wit:

### JURISDICTION AND VENUE

1.      The defendants in this action deprived Tina L. Wallace (hereinafter "Wallace") of various constitutional rights including but not limited to the deprivation of her right to Equal Protection to be free from race and sex discrimination and retaliation. This lawsuit is authorized and instituted pursuant to 42 U.S.C. § 2000E et seq., 42 U.S.C. § 1981, 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2202.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to the acts complained of by Wallace occurred in the Southern District of Mississippi, Northern Division.

## PARTIES

3. Plaintiff Tina L. Wallace is an African-American female adult resident citizen of Hinds County, Mississippi.

4. Defendant, City of Jackson, is a Mississippi municipality and may be served with process of this Court by serving a copy of the Summons and Complaint upon Mayor Tony Yarber.

5. Defendant, Lee Vance, is the police chief of the Jackson Police Department (hereinafter "JPD"). Vance may be served with process of this Court by serving a copy of the Summons and Complaint upon him wherever he may be found. Vance is being sued in his individual capacity.

6. John Does 1-4 are individuals whose identities are unknown to the Plaintiff at this time.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. All condition precedent to jurisdiction pursuant to Section 706 of title VII of the Civil Rights Act of 1964, as amended, have been complied with by the Plaintiff to wit: Appropriate charge of employment discrimination have been filed with the Equal Employment Opportunity Commission, and Notifications of Right to Sue were received by the Plaintiff from the Equal Employment Opportunity Commission on January 13, 2017. See, Exhibit A.

8. Plaintiff filed a timely complaint based on the time limits contained in § 706 of Title VII of the Civil Rights Act of 1964, as amended.

## STATEMENT OF FACTS

9.     Tina L. Wallace (hereinafter "Wallace") began her career in law enforcement with JPD in February of 1993. Wallace rose through the ranks of JPD and held positions of patrol officer, detective, sergeant, lieutenant, commander and then deputy chief. While Wallace was serving as a commander, former Police Chief Lindsey Horton (hereinafter "Horton") selected her to attend the 259th Session FBI National Academy in Quantico, Virginia from January of 2015 through March 2015. Horton was subsequently replaced by Police Chief Lee Vance (hereinafter "Vance"). After Vance was selected to serve as police chief, he selected Allen White (hereinafter "White") to fill his previous position of assistant chief of police. White had served as Deputy Chief of Patrol Operations. Vance selected Wallace to serve as Deputy Chief of Patrol Operations.

10.    At all times relevant herein, the defendants had a custom and policy of silencing police officers, protecting African-American male police officers and treating African-American male police officers more favorably than other similarly situated police officers. JPD officers were expected to adhere to a code of silence when they witnessed misconduct within JPD. In May of 2015, Wallace broke the code of silence and reported to Vance that police officers at Precinct Three had alcohol on the premises. City of Jackson policy prohibits police officers from possessing alcohol on city property. Vance did not respond. A few days later, White called Wallace and told her to stay away from the precincts and allow the precinct commanders to run their precincts. As Deputy Chief of Patrol Operations, Wallace supervised employees of all precincts, including but not limited to precinct commanders, all of whom are male.

11. On Thursday, July 23, 2015 several members of JPD's Command staff including Cheryl Childs, Commander of Internal Affairs, White and other JPD officers received and/or viewed a photo of an African-American male in army green fatigues (BDU pants) and black tactical boots showing his erect penis. The caption of the photograph stated: "What Commander t. (sic) Jones sends to his subordinates." The photograph was brought to Vance's attention. Vance discussed the photograph in Wallace's presence. Vance stated he was not going to launch an Internal Affairs investigation unless someone filed an official complaint.

12. In a separate meeting, Wallace told Vance, White and Deputy Chief Amy Barlow that Commander Thaddeus Jones said he would take a polygraph examination to demonstrate he was not the "Commander t. (sic) Jones" mentioned in the photo caption of the photograph that was floating around JPD. Vance told Wallace he was not ordering anyone to take a polygraph examination because no one had come forward to file a complaint.

13. The photo of the JPD officer with an erect penis surfaced. Upon information and belief, Vance did not investigate the matter because he knew "Commander t. (sic) Jones" was Commander Tyree Jones, an African-American male. Vance had just suspended Tyree Jones (hereinafter "Jones" for 30 days in May of 2015 for making derogatory statements about Muslims and women on Twitter. Vance was present in 2010 when then Police Chief Rebecca Coleman suspended Jones for 30 days after he admitted he was sexually involved with one of his subordinates.

14. Jones was not the only JPD officer who engaged in sexually inappropriate conduct in the work place. In April of 2015, Sergeant Montel Cleaver sent a video to a

female police officer. The video showed Cleaver bare chest with his pants unzipped revealing his underwear as he moaned in a sexually suggestive manner. While working at JPD, Wallace witnessed White call women as bitches and whores. White, who is white, frequently said that he is "I'm black from the waist down."

15. On or about August 23, 2015, WLBT broadcasted a story about Torrence Mayfield (hereinafter "Mayfield") being named Chief of Police of Edwards, Mississippi. At the time of the broadcast, Mayfield, an African American male, was a Commander at JPD and a member of Mayor Tony Yarber's dignitary team. At the time of the broadcast, JPD General Order 300-2 prohibited JPD officers from working police related jobs outside the city limits of Jackson. Vance took no action against Mayfield. Vance subsequently revised the general orders to allow JPD officers to work police related jobs outside of the city of Jackson.

16. Although Wallace was admonished after reporting misconduct of officer at Precinct three, Wallace told Vance she suspected some JPD officers were "double dipping" by working special detail for Jackson State University football games while simultaneously clocking in and being paid for duty at JPD. Upon information and belief, Jackson State pays JPD officers who work its football games. Again, Vance did not respond to Wallace's report.

17. On November 2, 2015, Wallace conducted a staff meeting with all of her all male district commanders, precinct commanders and special operation lieutenant to address them reporting to duty on time, leaving work early without approval, channeling directives, and other matters. After the staff meeting, Deputy Chiefs Joseph Wade and Brady Hightower (hereinafter "Hightower") asked Wallace to send them copies of her

notes so they can share the same information with employees under their commands. At their requests, Wallace sent a copy of her notes to Wade and Hightower.

18. Wallace had been scheduled to work a 5k run on November 7, 2015. Jesse Robinson, Lieutenant of Special Operations, (hereinafter "Robinson") called Wallace and told her the 5k run was cancelled due to weather conditions. Robinson, an African-American male, called Wallace on November 7, 2015, the day the 5k was scheduled to take place, and asked where she was. Wallace reminded Robinson that he told her on November 6, 2015 that the 5k run was cancelled. Wallace told Robinson to fill another JPD officer to work her slot.

19. Even though Wallace did not work the event, a check was pre-cut for her and was given to Corporal Allen Harper (hereinafter "Harper). Commander James McGowan, (hereinafter "McGowan") who is white, received a check for a November 3, 2015 event he did not work. The check was presented to McGowan by Corporal Henry Brown, who asked McGowan to endorse the check. McGowan refused to endorse the check. McGowan also requested a copy of the check.

20. On November 9, 2015, White told Wallace to notify all of her male staff to disregard her November 2, 2015 directives. On the same day, Vance told Wallace that he had received an anonymous complaint that she was getting paid for special detail assignments she didn't work. Wallace told Vance that she worked all special detail assignments for which she was paid and she never received compensation for a special detail assignment that she did not work. After Wallace learned about the anonymous complaint, Harper called her and asked her if she could meet him to cash the check that was made payable to her for the November 7, 2015 5k run. Wallace refused. Harper

later told Wallace the check was reissued and made payable to him because he worked the November 7, 2015 5k run.

21. In July of 2015, when Vance received an anonymous report about one of his officers sending a photograph of his erect penis, Vance proclaimed that he would not launch investigation without an official complaint. Vance, however, had no qualms with launching an investigation into Wallace's conduct even though he told her that the complaint was anonymous. On November 9, 2015, Vance directed Childs to contact Wallace and to direct Wallace to report to JPD's Internal Affairs Unit. When Wallace arrived at Internal Affairs, she was given her *Garrity* warnings and submitted to an interview. Wallace again denied the allegations and gave officers in Internal Affairs a list of witnesses to interview. None of Wallace's witnesses were interviewed.

22. During the internal affairs interview, Wallace asked for permission to review paperwork about an invoice submitted by Jesse Robinson, an African-American male lieutenant (hereinafter "Robinson"). Vance directed Internal Affairs to inform Wallace that she had to put her allegations against Robinson in writing. Wallace prepared a written report detailing the allegations against Robinson. Wallace also delivered an invoice that showed Robinson falsified his hours for a special detail for the Latin Fest Festival held on Sunday, October 25, 2015. Wallace asked internal affairs to pull Robinson's work records from Tougaloo College as they would show that he could not have worked 12 hours at the Latin Fest because he was on duty at Tougaloo College.

23. On November 10, 2015, Sergeant Ricky Robinson informed Wallace she was scheduled for a polygraph examination on November 11, 2015. On the morning of November 11, 2015, before her scheduled polygraph examination, Wallace received a

telephone call from White, who directed Wallace to call Corporal Sandra Dalton (hereinafter "Dalton") and to tell her that the keys to the command bus was hers if she wanted it. Wallace told White that she had already communicated with Dalton about the keys to the command bus and Dalton told her that she didn't want any part of the bus anymore. Notwithstanding Wallace's explanation, White directed Wallace to call Dalton and to follow up with him. Wallace complied with White's command and reported to White that she carried out his order.

24.     White's phone call, which came minutes before Wallace's scheduled polygraph examination, jolted Wallace, who suspected males JPD officers of trying to undermine her leadership because she is a female. Despite being upset, Wallace reported to the second floor of JPD's headquarters to undergo a polygraph examination. The polygraph examination was administered by Gale Mills, former chief of staff of the Mississippi Department of Public Safety (hereinafter "DPS"). On or about June 4, 2015, State Auditor Stacey Pickering demanded that Gale Mills pay $5,967.42 after she allegedly used her position at DPS to pay benefits to her son, who also worked there.

25.     After Gale Mills administered the polygraph examination, she told Wallace that she would receive a call from internal affairs. Internal affairs did not contact Wallace. Instead, White called Wallace and ordered her to report to Vance's office. When Wallace walked in, Vance directed her to close the door and handed her a letter. Vance told Wallace her services were no longer needed as the Deputy Chief of Patrol Operations and that she was being demoted to her tested rank of lieutenant effective immediately. Vance accused Wallace of forcing Robinson to hire two African-American males and a white male to work special events. Wallace denied the allegations.

26. A week after Vance demoted Wallace, a written complaint was filed against Deputy Chief Brady Hightower, an African-American male. In addition to working for JPD, Vance and Hightower work at all McDonalds in Jackson that are/were operated by Al Joyner. Upon information and belief, Brady Hightower (hereinafter "Hightower") was accused of allowing his girlfriend, who was not a police officer to work special events and to receive compensation for same. In addition, it was alleged that Hightower was working at Jackson Memorial Funeral Home while on the clock at JPD. It also was alleged that Hightower was using city employees and city equipment to do work unrelated to city business. Vance did not require Hightower to submit to a polygraph examination. All of Hightower's witnesses were interviewed. None of Wallace's witnesses were interviewed.

27. In January of 2016, Wallace was forced to undergo a polygraph examination for the written allegation that she made against Robinson. Robinson was not forced to undergo a polygraph examination. Vance took no actions against Robinson for falsifying his time. Vance subsequently promoted James Davis, an African-American male, to replace Wallace as Deputy Chief of Patrol Operations.

28. When allegations were made that Amy Barlow, who is white, was attending nursing school and working at a hospital in Rankin County, Mississippi while on the clock at JPD, she was not invited and no disciplinary action was ever taken against her. Barlow was not subject to a polygraph examination.

## CAUSE OF ACTIONS
## RACE AND SEX DISCRIMINATION

29.     The Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.  At all times relevant herein, Vance acted under the color of state law.

30.     Plaintiff contends that she had a clearly established right under the Equal Protection clause to be free from race and sex discrimination.

31.     Upon information and belief, Vance knew or should have known Wallace had a clearly established right to be free from race and sex discrimination and was entitled to be treated like similarly situated white and male police officers.  At all times relevant herein, the defendants had a custom and policy of silencing police officers, protecting African-American male police officers and treating African-American male police officers more favorably than other similarly situated police officers.  As a result of the defendants' customs and policies, Wallace's right to work in a work place free of race and sex discrimination were violated inasmuch as Vance treated similarly situated African-American men and a white woman more favorably than he treated Wallace.  As a proximate consequence of the actions of the defendants, Wallace was unlawfully demoted from her employment on account of her race and sex and treated less favorably than African-American male police officers and a white female on account of her sex and race, respectively.

## DAMAGES

32.     As a consequence of the foregoing misconduct of the Defendants, Wallace sustained pain and suffering, physical injury, great mental distress, depression, insomnia, shock, fright and humiliation as a result of the violation of her constitutionally protected and other legal rights.

33. As a consequence of the foregoing misconduct of the Defendants, Wallace has been damaged in an amount exceeding the jurisdictional requirements of this Court.

### RELIEF

34. Plaintiff requests that the Court issue the following relief:

  a. Award Wallace equitable back pay, front pay, reinstatement, economic damages for her lost pay, together with compensatory and punitive damages; and

  b. Award Wallace attorney fees, costs and expenses of litigation and a jury trial.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff Tina L. Wallace demands judgment against the Defendants in an amount exceeding the jurisdictional requirements of this Court, all together with the costs and disbursement action, including attorneys' fees, plus interest, and for any other relief which this Court deems just and proper premises.

**RESPECTFULLY SUBMITTED** this, the ____14th____ day of April, 2017.

TINA L. WALLACE

By: _/s/ Lisa M. Ross_

Lisa M. Ross (MSB # 9755)
Post Office Box 11264
Jackson, MS 39283-1264
(601) 981-7900 (telephone)
(601) 981-7917 (facsimile)

Attorney for Plaintiff