UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TINA L. WALLACE                                                                    PLAINTIFF

V.                                                    CIVIL ACTION NO. 3:17-CV-270-DPJ-FKB

CITY OF JACKSON AND CHIEF LEE VANCE,
IN HIS INDIVIDUAL CAPACITY                                                  DEFENDANTS

ORDER

The City of Jackson, Mississippi, and Chief Lee Vance seek summary judgment on the

employment-discrimination claims of Tina Wallace, who served as Deputy Chief of Patrol

Operations at the Jackson Police Department ("JPD"). For the reasons explained below, the

Court finds the motion should be granted in part and denied in part.

I.        Facts and Procedural History

Wallace, an African-American female, was removed from her position as Deputy Chief

in 2015, following an investigation by JPD's Internal Affairs Division ("IAD"). JPD accused

Wallace of pressuring a subordinate, Lieutenant Jessie Robinson, to hire certain JPD officers to

work special events. Robinson said Wallace "told him to put certain people on the list," and

Wallace denied doing so. IAD Finding [22-2]. As part of the investigation, JPD subjected both

Wallace and Robinson to polygraph examinations. Polygraph Rep. [17-3]. The findings

suggested Robinson was being truthful and Wallace was not. *Id.* Chief Vance responded by

reassigning Wallace to a Lieutenant position. Vance Letter [17-4].

Wallace, believing the reassignment was actually a demotion motived by her race and

gender, filed a charge of discrimination with the Equal Employment Opportunity Commission

("EEOC"). After receiving notice of her right to sue, she filed the instant lawsuit against the

City of Jackson and Chief Vance in his individual capacity. She asserts claims of race

discrimination, sex discrimination, and retaliation, invoking Title VII, 42 U.S.C. § 1983, and the

Equal Protection clause.  Defendants moved for summary judgment as to all claims, and Wallace

responded in opposition.  The Court has personal and subject-matter jurisdiction over the dispute

and is prepared to rule.

II.     Summary Judgment Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when

evidence reveals no genuine dispute regarding any material fact and that the moving party is

entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence,

factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both

parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make

credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and

legalistic arguments have never constituted an adequate substitute for specific facts showing a

genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.     Analysis

In her Complaint, Wallace advances claims of race discrimination, sex discrimination, and retaliation against the City of Jackson and Chief Vance in his individual capacity. Am. Compl. [11] at 1. The Court will address the retaliation and discrimination claims in turn, as well as the concepts of municipal liability and qualified immunity.

A.     Retaliation

Wallace says Defendants demoted her "in retaliation for reporting misconduct by African-American male police officers" and "for reporting that an African-American male police officer allegedly assaulted a female JPD employee in her home." Am. Compl. [11] at 12. But Defendants did not address retaliation in their motion for summary judgment. When Wallace pointed this out in her response, Defendants argued in reply that she cannot make out a prima facie case. Resp. [23] at 1 n.1; Reply [24] at 7–8. But the Court will not consider arguments raised for the first time in reply. *See Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) ("It is the practice of . . . the district courts to refuse to consider arguments raised for the first time in reply briefs." (citation omitted)). As a result, Wallace's retaliation claim will proceed to trial, with one qualifier. The Court notes that Wallace can assert a retaliation claim only under Title VII; "the Equal Protection Clause does not preclude workplace retaliation." *Robinson v. Jackson Pub. Sch. Dist.*, No. 3:08-CV-135-DPJ-FKB, 2011 WL 198127, at *5 (S.D. Miss. Jan. 20, 2011) (collecting cases).

B.     Race and Sex Discrimination

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  And "when section 1983 is used as a parallel remedy with Title VII in a racial discrimination suit the elements of a cause of action are the same under both statutes."  *Lee v. Conecuh Cty. Bd. of Educ.*, 634 F.2d 959, 962 (5th Cir. 1981).

So, under either theory, Wallace must first establish a prima facie case of discrimination by showing (1) she is a member of a protected class, (2) she was qualified for the position at issue, (3) she was the subject of an adverse employment action, and (4) she was replaced by someone outside the protected class, or in the case of disparate treatment, she was treated less favorably than similarly situated employees under nearly identical circumstances.  *See Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001); *see also McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

If the plaintiff establishes a prima facie case, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action.  *Lee*, 574 F.3d at 259. Once that burden is met, to prevail on a race or sex-discrimination claim, the plaintiff must offer evidence to show "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive alternative)."  *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004).

Finally, there is one significant difference between Title VII and § 1983—Title VII

applies only to employers, not individual employees.  Therefore, Chief Vance is not subject to

liability under Title VII; only the City, as Wallace's employer, is potentially liable.  *Ackel v.*

*Nat'l Commc'ns, Inc.*, 339 F.3d 376, 382 n.1 (5th Cir. 2003) ("Individuals are not liable under

Title VII in either their individual or official capacities.").  To the extent Wallace asserted Title

VII claims against Chief Vance, those claims are dismissed.

1.      Race Discrimination

To support her claim of race discrimination, Wallace asserts that a white female officer

who allegedly engaged in misconduct was treated more favorably.  Am. Compl. [11] at 8, 12.

Specifically, she claims Officer Amy Barlow falsified her time by "working at a medical facility

in Rankin County, MS, while on company time" but was not demoted.  EEOC Charge [22-1] at

1.  To support this allegation, Wallace attached an affidavit from JPD Officer Deric Hearn, who

stated:

> Lee Vance refused to launch an investigation on Amy Barlow when she was his
> commander in Major Investigation even after I provided written documentation to
> Lee Vance requesting an Internal Affairs investigation for Barlow falsifying her
> time in Kronos.  Barlow was working at a hospital in Rankin country while on
> city time.  Barlow was later promoted.

Hearn Aff. [22-4] at 1.[1]

Defendants do not squarely address Wallace's race-discrimination claim in their opening

brief.  Without citation to record evidence, they suggest in a conclusory fashion that her reliance

on Barlow, along with four male officers, as comparators is misplaced because these officers

violated "policies different than those breached by Plaintiff."  Defs.' Mem. [18] at 8.[2]  After

---

[1] Kronos is a software program used to record employee time records and generate payroll.
[2] *See* Rule 56(c)(3) ("The court need only consider the cited material. . . .").

Wallace observes this deficiency, Defendants assert in reply—again without citation to record

evidence—that IAD conducted an investigation of allegations that Barlow falsified her time and

concluded the accusations were unfounded.  Pl.'s Resp. [23] at 17 n.3; Defs.' Reply [24] at 3.

Construing the evidence in the light most favorable to Wallace, and considering the fact that

Defendants raised new, unsupported arguments in reply, the Court finds that summary judgment

on Wallace's race-discrimination claim should likewise be denied.  *See Gillaspy*, 278 F. App'x at

315.

> 2. Sex Discrimination

It is undisputed that Wallace is female, was qualified for her position at JPD, and was

replaced by Jessie Robinson, a male.  Defs.' Mem. [18] at 7; Pl.'s Resp. [23] at 18.  But

Defendants say she cannot show that "her reassignment amounted to discrimination."  Defs.'

Mem. [18] at 7.  While not entirely clear, the Court presumes that Defendants are asserting that

Wallace cannot show she suffered an adverse employment action.

Adverse employment actions generally consist of ultimate employment decisions such as

hiring, firing, *demoting*, and promoting.  *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir.

2014).  Moreover, transfer or reassignment "can be the equivalent of a demotion," if the new

position is less prestigious or provides less room for advancement.  *Id.*; *Holmes v. Drug*

*Enforcement Admin.*, 512 F. Supp. 2d 826, 840 (W.D. Tex. 2007).

Here, Wallace presented evidence that her move from Deputy Chief of Patrol Operations

to Lieutenant of Administration involved a decrease in salary ($66,017.88 to $47,458.36

annually), a less-prestigious title (chief to lieutenant), and a reduction in responsibilities.

Wallace Decl. [22-26] at 1–3 (explaining new title, decreased salary, and loss of supervisory

responsibility over 400 officers and 100 civilian employees); *see* EEOC Charge [22-1] (noting

demotion and salary reduction); Wallace IAD Rep. [22-2] (ordering demotion).  Wallace's

demotion qualifies as an adverse employment action; she has made out a prima facie case of sex

discrimination.

Moving to the employer's legitimate, non-discriminatory reason, Defendants submit that

Wallace's polygraph examination, which suggested that she was not being truthful, served as

grounds for Chief Vance to demote her.  Defendants also insist that Wallace served at the will

and pleasure of Chief Vance and he could reassign her at any time.  Wallace challenges these

reasons in two ways:  (1) arguing that male officers accused of misconduct were not given

polygraph examinations; and (2) contending that male officers engaged in similar, or more

egregious, misconduct and were not investigated or demoted.[3]

Wallace presented substantial record evidence detailing misconduct by other officers.

Defendants say those comparators are not similarly situated, but they present no evidence to back

up this assertion.  Admittedly, the comparators Wallace offers may not have engaged in identical

conduct, but "a requirement of complete or total identity rather than near identity would be

essentially insurmountable, as it would only be in the rarest of circumstances that the situations

of two employees would be totally identical."  *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887,

893 (5th Cir. 2012) (citation omitted).

Whether Wallace created a fact question is a close call.  But construing all reasonable

inferences in the light most favorable to her, and given the fact that her other claims survive

summary judgment, the Court finds summary judgment on her sex-discrimination claim should

---

[3] It is not clear if Wallace is taking the "pretext" or "motivating factor" approach.  She denies
pressuring Robinson to make certain assignments—the conduct that prompted the IAD
investigation.  She also suggests that the polygraph results are unreliable because she was rattled
by a phone call from Assistant Police Chief Allen White moments before the examination.  Am.
Compl. [11] at 6.

also be denied.  *See Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) ("Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

C.    § 1983

Wallace's equal-protection claims are brought against the City and Chief Vance in his individual capacity under 42 U.S.C. § 1983.  *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (noting § 1983 provides a method for vindicating federal rights conferred by the Equal Protection Clause).  In their motion for summary judgment, Defendants raise two additional arguments specific to the § 1983 claims:  (1) Wallace has not pleaded sufficient facts to establish municipal liability and (2) Chief Vance is entitled to qualified immunity.

1.    City of Jackson

To hold the City liable, Wallace must identify the three requirements for municipal liability under § 1983:  (1) a policymaker; (2) an official policy, widespread practice, or custom; and (3) and a violation of constitutional rights whose moving force is the policy or custom.  *Id.* In her response to the motion, Wallace states:  "Recognizing this Court may be find [sic] that Plaintiff's [§] 1983 claims against the City of Jackson was [sic] not adequately pled, Wallace will seek permission by separate Motion to Amend her Complaint to state a [§] 1983 action against the City of Jackson."  Pl.'s Resp. [23] at 31.  To date, Wallace has not filed a motion seeking leave to amend.  The Court construes this decision as an abandonment of the § 1983 claims against the City of Jackson.  Alternatively, the Court agrees with Defendants that Wallace has failed to plead facts establishing the elements of municipal liability.

2.      Chief Vance

As for Chief Vance's entitlement to qualified immunity, Defendants submit that Wallace relies on conclusory allegations that are insufficient to withstand summary judgment. Defs.' Mem. [18] at 13; *see Anderson v. Valdez*, 845 F.3d 580, 599–600 (5th Cir. 2016) (setting out the requirements to overcome the defense of qualified immunity). While Wallace gave a limited response to Chief Vance's qualified-immunity argument, she has presented sufficient evidence to move past summary judgment on her race and sex-discrimination claims. The claims against Chief Vance are based on his alleged conduct, and Wallace cites cases suggesting that qualified immunity is not available for substantiated claims of intentional discrimination (though admittedly in the motion-to-dismiss context). *See* Pl.'s Resp. [23] at 32 (citing *Stark v. Univ. of So. Miss.*, 8 F. Supp. 3d 825, 836 (S.D. Miss. 2014) (finding individual accused of failing to promote plaintiff due to her gender was not entitled to qualified immunity); *King v. Lawrence Cty. Bd. of Educ.*, No. 2:12-CV-68-KS-MTP, 2013 WL 319286, at *4 (S.D. Miss. Jan. 28, 2013) (denying qualified immunity and noting "that Plaintiff's allegations—if true—are sufficient to indicate that Defendant's actions were not objectively reasonable"); *see also Blackwell v. Laque*, 275 F. App'x 363, 367–68 (5th Cir. 2008) (affirming denial of qualified immunity on interlocutory appeal where district court found plaintiff had made out prima facie case of discrimination and that material fact dispute existed as to whether plaintiff was treated less favorably on account of race). Qualified immunity is denied.

IV.     Conclusion

The Court has considered all arguments raised by the parties; those not addressed would not have changed the outcome. The Court finds Defendants' motion should be granted in part and denied in part as follows:

- Wallace's Title VII claims against Chief Vance are dismissed;

- Wallace's § 1983 equal-protection claims against the City of Jackson are dismissed;

- Wallace's § 1983 equal-protection claims against Chief Vance in his individual capacity proceed to trial, and Chief Vance is denied qualified immunity as to these claims;

- Wallace's Title VII retaliation claim against the City of Jackson proceeds to trial; and

- Wallace's Title VII race and sex discrimination claims against the City of Jackson proceed to trial.

**SO ORDERED AND ADJUDGED** this the 29th day of November, 2018.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE